JOHN J. COSTELLO *vs.* RUFUS P. EDSON and others.

### July 18, 1890.

**Adverse Possession—Acts Requisite.**—Acts of possession of and dominion over real estate may constitute adverse possession, although the personal occupancy of the intruder be not continuous, if the nature of his acts and possession are such as to constitute a disseisin of the true owner, and to clearly and openly manifest a present appropriation of *the land* by the intruder to his own permanent and exclusive use, the use being obviously distinguishable from a mere trespass.

**Same—Acts held Sufficient.**—Proof of entry, under color of title, by one not the owner, upon platted village lots covered with a growth of underbrush, and of the cutting and burning of this growth, the grubbing and complete clearing of the land, and of the payment of taxes, *held* sufficient to sustain a finding of disseisin and adverse possession.

**Same — Building Vacant for Want of Tenants.**—The fact that lands held in adverse possession by a disseisor, who had erected buildings on and otherwise improved the land, may become vacant from time to time for want of tenants, *held* not to interrupt the adverse possession of the disseisor.

Appeal by plaintiff from an order of the district court for St. Louis county, *Stearns, J.*, presiding, refusing a new trial after verdict for defendants.

*Ensign, Cash & Williams*, for appellant.

*White, Shannon & Reynolds* and *Edson & Hanks*, for respondents.

DICKINSON, J.[1] This is an action of ejectment for the recovery of two contiguous platted lots in Upper Duluth. The defendants had a verdict in their favor, and the plaintiff has appealed from an order refusing a new trial. The only grounds upon which the appellant seeks a reversal of the order are that the evidence in the case of the adverse possession of the defendant Hibbard was insufficient to justify submitting to the jury the question whether Hibbard had maintained an adverse possession for 20 years prior to the commencement of this action, in January, 1889, and that for the same reason the verdict was not justified by the evidence. In the spring of 1870, according to the evidence on the part of the defendants, the defendant Hibbard constructed a story and a half frame dwelling-house on one of the lots. In the same year he inclosed both lots with a fence, and set out raspberry, gooseberry, and currant bushes and apple trees, the shrubbery and trees being on both lots. He also built a barn there. Hibbard moved into the house in 1870, and resided there for some 11 years, excepting a period of less than a year, when he was absent, but during which time he left a part of his household goods in the house, intending to return there, as he did do. One Jones occupied the premises under contract with Hibbard immediately after the latter left, in 1881, and remained in possession some three or four years. After that it was sometimes occupied by tenants under Hibbard, and sometimes has been vacant for periods as long as six months at a time; but he always had the key of the house in his possession, excepting when the premises were in the occupation of some one holding under him. He paid the taxes upon the land, made improvements, and his possession and acts of dominion were undisputed by any other claimant. His original entry upon the land was with a claim of title under a tax-deed of both lots, although the deed was in-

---

[1] Vanderburgh, J., took no part in this case.

valid. A sufficient case of adverse possession, continuously maintained from 1870 to the time of the commencement of the action, was shown. The fact that the house was unoccupied at different periods, under the circumstances to which we have briefly referred, did not interrupt the continuous dominion and possession of Hibbard. Actual residence upon the land is not a necessary condition of adverse possession, nor is constant occupancy of a house, erected by the disseisor, necessary, where all the conditions show a continuance of his established dominion. *Mackentile* v. *Savoy*, 17 Serg. & R. 104, 109; *Coleman* v. *Billings*, 89 Ill. 183; *Ewing* v. *Burnet*, 11 Pet. 41; *Ellicott* v. *Pearl*, 10 Pet. 412, 442; *Kerr* v. *Hitt*, 75 Ill. 51.

But the possession from the time of the erection of the house, in 1870, to the time of the commencement of this action, did not cover the full period of 20 years; and the principal question in the case is whether adverse possession was shown during the period prior to 1870, and as far back as January, 1869. There was evidence in the case going to establish these facts bearing upon that matter, in addition to those already referred to: Hibbard's first entry upon the lots was in 1863, under the tax-deed above referred to. The land had then been platted into lots. These lots were covered with a thick growth of underbrush. One large tree and several smaller trees were standing there. The surrounding lands were in a similar condition. In 1863, Hibbard went with a surveyor, and by surveys found and marked these lots. In 1864 he went again, and cut all the small brush off these lots, camping there, with the servant whom he employed in that work, two or three days. In 1865 he cut all the timber excepting the one large tree, and piled the brush; camped there two or three days. In 1866 he camped there again two or three days; "burned the stuff all up; cleared it up." In 1867 he cut the large tree, and sawed it into posts to be placed under the house to be erected. They were subsequently so used. In 1868, having been informed that he was not on the right land, he resurveyed it, grubbed up the stump of the large tree, and "finished clearing up the ground." All the stumps had then been taken out. In 1869 he had other timber brought on the premises to be used in making the foundations for a house. The following spring the house was built. During the years

in which he did the work of clearing upon the land he left his tools upon the premises from year to year. He paid the taxes every year. The contention on part of the appellant is that this evidence was insufficient to show adverse possession by Hibbard. It is true that the real owner of lands, although they be wild and unoccupied, is to be deemed as constructively in possession; and the acts of a wrong-doer infringing upon the rights of the owner are to be construed strictly against the invader. Clear proof of actual adverse possession will be required to place the wrong-doer in a position to avail himself, in defence of his possession, of the limitation barring the right of the owner to recover. But we are of the opinion that the defendants' case justified the conclusion that Hibbard was in adverse possession of this land during the year 1869, and prior thereto.

To determine whether particular acts or a course of conduct constitute adverse possession which, if continued, will bar the title of the original owner, regard must be had to the nature or quality of the acts, and to the situation of the property, as well as to the theory upon which the doctrine of adverse possession rests. The owner becomes barred of his right by reason of his acquiescence in the hostile possession of another under a claim of right, maintained for the period of 20 years, and of which he has notice, or which is maintained under such circumstances that he is presumed to have notice. Hence the possession must be actual, for otherwise there is no disseisin, and the real owner remains in possession, actually or constructively. It must be continuous, for upon its cessation or interruption the possession, in contemplation of law, is again in the holder of the legal title. It must be hostile to the real owner, and with intention to claim the land adversely to him; and this must be manifest from the nature or circumstances of the possession, so that the owner may be informed of it, and that he shall not be misled into acquiescence in what he might reasonably suppose to be a mere trespass, when he would not have acquiesced in the assertion of a right adverse to his own title. The possession of land may consist in, and be shown by, a great variety of acts, but the law prescribes no particular manner in which possession shall be maintained or made manifest, to constitute what we comprehensively term "adverse possession." It may be under vari-

ous circumstances, by inclosure, by cultivation, by the erection of buildings, or by other improvements, or by any visible, open use, clearly indicating an actual appropriation of the land to the permanent and exclusive dominion and benefit of the invader; such a use as is calculated to inform the real owner of the fact of occupancy, and that it is adverse or hostile to his own title. *Ellicott* v. *Pearl,* 10 Pet. 412, 442; *Foulke* v. *Bond,* 41 N. J. Law, 527; *Kane* v. *Footh,* 70 Ill. 587; *Eastern R. Co.* v. *Allen,* 135 Mass. 13; *Samuels* v. *Borrowscale,* 104 Mass. 207; *Little* v. *Downing,* 37 N. H. 355; *Brumagim* v. *Bradshaw,* 39 Cal. 24; *Childress* v. *Calloway,* 76 Ala. 128, 133; *Ford* v. *Wilson,* 35 Miss. 490, 504; and cases cited above.

The construction of buildings upon the land, inclosing it with fences and the like, have always been regarded as significant acts of adverse possession, because such an occupancy is of a character well calculated to inform the owner both of the fact of possession, and that the intrusion is not intended as a mere temporary trespass. They are acts which ordinarily one would not be expected to do upon the land of another, thus contributing his own labor or property to the benefit of another, the land-owner, but are such acts as one owning the land, or deeming himself to be the owner, may be expected to do in the permanent improvement and enjoyment of his own estate. Upon their face they manifest a use, possession, and dominion assumed over the land itself, naturally distinguishable from a mere trespass on the land. On the other hand, the mere cutting and removal of timber or fuel or natural grass from unoccupied land have not generally, and under ordinary circumstances, been regarded as constituting adverse possession. Such acts are quite as naturally to be referred to the purpose on the part of the trespasser merely to take off and avail himself of the valuable natural product of the land, as to a purpose to appropriate *the land* to his own use, and to occupy and claim it as his own.

Now, what was the apparent quality and purpose of the acts of Hibbard in respect to these lots in the years immediately prior to 1870? Of course, they constituted a trespass. All adverse possession is a trespass. But, as it seems to us, they would never be looked upon by an owner of the land in any other light than acts of domin-

ion over the land itself, done for the purpose of appropriating the land—not the underbrush and few small trees—to his own purposes for some permanent use. It was perfectly apparent that the purpose or motive in clearing these two platted village lots of the thick growth of underbrush, felling the few trees, digging out the stumps, and burning up what was thus laboriously taken from the land, must have been directed to something beyond this systematic removal and destruction of the for the most part worthless growth upon the land, and must have been referable to some use or enjoyment of the land to which this was preparatory. Such a clearing of these lots was a work and possession of a character calculated to excite the attention of the owner, and would not be likely to be looked upon as a mere trespass, devoid of intention on the part of the intruder to possess and use the land as his own. Such acts, done upon the land from year to year, were as really indicative of the fact of possession, and as really characterized the possession as being a dominion over the land and distinguishable from a mere trespass, as would have been the fencing and cultivation of the land. Our conclusion is that the case justified the finding that the land was in the adverse possession of Hibbard during the year 1869, and even prior thereto.

Order affirmed.

GILFILLAN, C. J., (*dissenting.*) I do not think there was evidence sufficient to go to the jury of any continuous adverse possession prior to 1870, and therefore dissent.