Alpheus B. Wood and others *vs.* Anton Springer and Wife.

January 23, 1891.

**Ejectment—Adverse Possession—Evidence.**—Evidence considered, and *held* sufficient to justify a verdict that defendant had been in adverse possession of the demanded premises for 20 years before the commencement of these actions.

These were four actions of ejectment for lots in St. Paul Park in Ramsey county, brought in the district court for that county by Alpheus B. Wood, Charles A. Miner, Alexander E. Herpin, and Harry F. Weis, (as administrator, with the will annexed, of the estate of Adam C. Deutz, deceased,) respectively, and tried together before *Kelly,* J., and a jury, who found for the defendants. The plaintiffs respectively appeal from an order refusing a new trial.

*Paul & Merwin, S. & O. Kipp,* and *Warner, Richardson & Lawrence,* for appellants.

*S. L. Pierce, J. M. Gilman,* and *M. D. Munn,* for respondents.

Mitchell, J.[1]  These four actions in ejectment were all tried together upon the same evidence, and in each the defendant had a verdict. It is conceded that the plaintiffs had title to the demanded premises, unless the defendant had acquired title by 20 years' adverse possession, and the question is whether the verdicts were justified by the evidence. The first of the actions was commenced August 1, 1888, and the others in January, May, and August, 1889, respectively. There can be no doubt as to the sufficiency of the evidence to establish adverse possession for many years before any of these actions were commenced, the only question being its sufficiency to show such possession for the full period of 20 years—that is, in 1868 or 1869. It appears that one Miller, who owned a tract of wild land between Lake Josephine and Bass Lake, containing over 160 acres, had platted it as St. Paul Park, subdividing it into 39 lots of about 5 acres each. At various dates in 1857 and 1858,

[1] Vanderburgh, J., took no part in this case.

Miller had conveyed to the respective plaintiffs the lots involved in this suit. In January, 1867, he conveyed to the defendant all his remaining lots, (13 in number,) and at the same time assigned to him tax certificates of sale of forfeited lands, which he had obtained from the county auditor in 1866, on the lots previously conveyed to plaintiffs. Neither the certificates nor the assignments were ever recorded, or any deeds ever issued on them, and it is not claimed that defendant acquired either title or color of title under them. Up to the time of defendant's entry, as hereinafter stated, the entire tract constituting St. Paul Park was uninclosed and wholly unimproved, being covered with timber and a dense growth of underbrush, interspersed with some pieces of marsh and natural meadow, particularly in the southwest corner. Lake Josephine, with a swamp connected with it, formed a natural barrier on the west, and one Dean, who owned land on the east, had, for the purpose of inclosing his own land, built a fence along part of the east line. The lots conveyed by Miller to defendant, as were also those conveyed to the plaintiffs, were scattered promiscuously in different parts of the plat. Such was the condition of things in the spring of 1867. There is evidence from which the jury might have found the following facts, viz.: That defendant, with the intention of opening up a farm on the land, and supposing that the papers he had received from Miller gave him title to all the lots in the plat, except six owned by Woodward & Kline, in the spring of 1867, had a surveyor run the exterior lines of the whole tract, marking trees and cutting brush to indicate their location; that the same spring he built on the land a small board shanty, in which he and one or more of his sons lived when at work on the premises; that the same season he cleared some three acres around the shanty, and also made a "lop" or "slash" and brush fence along the south line from the Dean fence, at the southeast corner of the land, to the swamp connected with Lake Josephine, at the southwest corner, the west end of this fence in the low land, where there were no trees or brush growing, being, however, made of posts and poles and a few boards; that, in the spring of 1868, he increased the clearing in the vicinity of the shanty by clearing additional two acres, and planted part of it with vegetables; that, during the summer of

the same year, (1868,) and by August 1st, he made a brush or lop fence along the north line of the tract, and southerly, along the east line, far enough to meet the Dean fence, which, with the fence previously built on the south line, together with the Dean fence and the natural barrier on the west, inclosed, in a manner, at least, the entire tract. The shanty was built, and, so far as appears, all of the clearing referred to was made, wholly on defendant's own lots. The jury might also have found that in 1867 and in 1868 defendant cut and put up some hay on the land, but whether on his own lots or those of plaintiffs, or both, does not appear; also that during those years he pastured a cow and span of horses on the land, although it appears that at least one of the neighbors made a similar use of it, by allowing his stock to range on it. Prior to defendant's entry, there had been a road or track across the premises, which was travelled more or less by the public. This continued to be travelled during the years 1867–68 and some subsequent years, the same as before, the places where it crossed the brush fences being part of the time entirely open, and part of the time closed by poles used as bars, which the public were in the habit of removing as occasion required. After his purchase from Miller, defendant paid taxes on the demanded lots as well as his own; but when he first did so does not appear. We think the above is all which there is any evidence reasonably tending to prove.

The general rules of law as to adverse possession are well settled. It must be actual, visible, and exclusive, as well as hostile. The doctrine proceeds upon the theory of the acquiescence of the true owner in his disseisin for the full statutory period; hence, the possession which affects him is what appears on the ground itself. It must be such as would operate as unambiguous and unequivocal notice to him that some one is in possession in hostility to his title under claim of right; and, while much will depend on the nature and situation of the property and the uses to which it is adapted, yet in all cases it must be a possession which is accompanied with the real and effectual enjoyment of the property,—the possession which follows the subjection of the property to the will and dominion of the claimant to the exclusion of others. The acts must be such as indi-

cate that a permanent occupation and appropriation of the premises is intended, as distinguished from a casual trespass for some temporary purpose. And, inasmuch as it is only the possession which appears on the ground which affects the true owner, it follows that, while such acts as paying taxes or surveying lines may characterize a possession, if it exists, as hostile, yet they do not themselves constitute the possession which the law requires to toll the right of the true owner. On these general abstract propositions we are all agreed. Personally I am of opinion that, tested by these rules, the facts are insufficient to make out adverse possession; that the fact that defendant had built a shanty and made a clearing on his own lots would not indicate or impute notice to the plaintiffs that he also claimed the demanded lots; that the making of these lop or brush fences (which was the only other thing visible on the ground) was an act of such ambiguous and equivocal import as to be entirely inadequate to fulfil the requirements of law. But my brethren are of opinion that the evidence made a case for the jury; that, although the shanty and breaking were not on any part of plaintiffs' lots, yet the fact that they were on a tract of land which was all inclosed as one by these fences would indicate that the occupant was there under claim of right, not merely to the particular piece which he had cleared, but of the whole tract which he had included within the inclosure; that, in view of the nature and situation of the property and its undeveloped condition, it might be said that the whole tract was as fully subjected to the will and dominion of the defendant, to the exclusion of others, as circumstances reasonably admitted of.

We have not overlooked plaintiffs' other assignments of error, but find nothing in any of them requiring special notice. None of them are, in our judgment, well taken.

Order affirmed.