Nancy J. Ricker vs. John G. Butler and others.

April 2, 1891.

Adverse Possession—Color of Title—Tax-Deed.—On the trial of an issue of adverse possession, a tax-deed, although invalid, is admissible to show color of title.

Same—Deed from One Cotenant—Ouster of Others.—An entry and exclusive possession under a recorded deed from one of several tenants in common, purporting to convey the whole estate, may constitute an ouster of the other cotenants, and an adverse possession.

Same—Death of Occupant—Continuance of Possession.—A sole occupant in adverse possession dying, leaving his personal property on the premises, and a stranger (afterwards appointed administrator) taking charge and caring for it in behalf of the estate, the adverse possession may be deemed to continue without interruption during the time reasonably necessary for the appointment of a personal representative.

v.45m.—35

**Same—Possession of Meadow.**—Evidence deemed sufficient to show continuous adverse possession of meadow land chiefly useful as a hay farm, and on which the grass was harvested every year.

Action brought in the district court for Hennepin county, to determine the adverse claims of defendants to land in that county, alleged in the complaint to be vacant and unoccupied. The defendants answered alleging title in fee and possession in defendant Butler (the other defendants being his mortgagees) and asking judgment confirming his title as against the claims of plaintiff. The action was tried by *Young*, J., who ordered judgment for defendants. A new trial was refused, and the plaintiff appealed.

*Flannery & Cooke,* for appellant.

*William Peet, Jr.,* and *Chas. J. Bartleson,* for respondents.

DICKINSON, J.[1]  On this appeal we are to decide whether the evidence justified a finding that for 20 years prior to the commencement of this action (November, 1889) the land in question had been in the continuous adverse possession of the defendant Butler and of one Dexter, to whose rights Butler succeeded by conveyance. In August, 1867, Silas M. Ricker being the owner (as tenant in common with others, who have since conveyed their title to the plaintiff) of an undivided one-third of the land, and one Stanchfield having an invalid tax-deed of the same land, Ricker and Stanchfield executed to Dexter a warranty deed of conveyance of the whole land, which was then recorded. The land is chiefly meadow land, only a small part of it being suitable for cultivation. The same year Dexter entered upon the land and cut the grass, and in the spring of 1868 he moved into a small house on the premises, and up to the time of his death, February 12, 1885, continued his residence and occupancy, cultivating a small tract as a garden, and cutting the grass on the remainder. He also made permanent improvements by constructing a system of ditches for the draining of the land. At the time of his death Dexter had some live-stock on the place, and a quantity of corn and hay in stack. He was a single

[1] Vanderburgh, J., took no part in this case. Mitchell, J., was absent when the decision was filed.

man, with no family. Immediately after the death of Dexter, one Smith assumed the care of the property, and made arrangements for the keeping of the live-stock on the place, but in March he removed the live-stock, leaving the corn and hay on the premises. In the latter part of April, after due notice, Smith was appointed administrator of the estate of Dexter, and then sold the personal property, and employed a man to harvest the hay growing on the land. In August, 1886, the administrator sold the land by authority of the probate court to the defendant Butler, who went upon the land and sold the grass growing there that year. In the years 1887, 1888, and 1889 he let the tillable land for cultivation, and caused the grass to be cut and harvested. After Dexter's death no one lived upon the place. The crop of hay harvested every year after Dexter's death amounted to 75 or 100 tons.

When the tax-deed to Stanchfield was offered in evidence, the court sustained an objection to its reception, but afterwards did consider it as in evidence. The plaintiff was not prejudiced by this. There is no claim that Stanchfield had acquired any title by that deed. The controversy here is whether the defendants have title by adverse possession. The fact that Ricker and Stanchfield executed a deed of conveyance to Dexter of all the land is undisputed, and by such conveyance Dexter had color of title irrespective of the tax-deed to Stanchfield. We do not see that it can have made any difference, either in the course of the trial or in the decision, whether that invalid deed be treated as in the case or out of it.

There can be no reasonable doubt that the court was justified in finding that Dexter was in the actual, open, exclusive possession of the whole land, at least from the time he entered and commenced residing on the place, in the spring of 1868, to the time of his death there, in February, 1885; and that his possession was adverse or hostile, so as to constitute an ouster of the persons under whom the plaintiff claims, and who really owned an undivided two-thirds of the land. His entry and possession being under a recorded conveyance purporting to convey the whole estate, the fact that his grantor was a tenant in common with others did not prevent his exclusive possession being hostile and adverse in its character. *Bogardus* v. *Trinity*

*Church*, 4 Paige, 178; *Bigelow* v. *Jones*, 10 Pick. 161; *Culler* v. *Motzer*, 13 Serg. & R. 356; *Unger* v. *Mooney*, 63 Cal. 586; Freem. Cotenancy, § 224. See numerous authorities cited in 1 Amer. & Eng. Enc. Law, 234–236. There is more room for doubt whether the adverse possession was continuously maintained after Dexter's death, but as to this, also, we think that the conclusion of the trial court is justified by the case. The death of Dexter did not necessarily interrupt the adverse possession which he had maintained for some 17 years. It was in the power of his heirs, or of those who might come to represent his estate, to continue that possession, and, from the fact that some brief time must necessarily elapse after his death and before the appointment of legal representatives of the estate, it does not follow that the adverse possession is to be deemed to have been abandoned, or in contemplation of law to have ceased, during that period. *Costello* v. *Edson*, 44 Minn. 135, (46 N. W. Rep. 299.) Mr. Smith, for whose appointment as administrator the proper steps were taken without unreasonable delay, assumed at once to care for the estate; in behalf of the estate, and not for himself, made provision for the care of the property of the deceased, some of which was kept on the place until after Mr. Smith's appointment as administrator. After his appointment he had, under our statute, the legal right to take possession and control of the real estate of the deceased, and such possession would be in privity with that of the intestate. The privity and continuity of such a possession would not be affected by the fact that the possession of the intestate had not ripened into a perfect title. It is only important, so far as the question under consideration is concerned, that the possession which the intestate had maintained under a claim of title be taken up and continued by others in privity with him, and without interruption. Without commenting further on the evidence, we will say, in brief, that we deem it to have been sufficient, in view of the situation of the property and the nature of the dominion which for 17 years had been uninterruptedly maintained, to show a continuance of that adverse possession and claim of title from the time of the death of Dexter to that of the sale by the administrator to Butler. The acts of dominion were in behalf of the estate of Dexter; not independent of his

possession and claim of title, but in continuance of it.   There was no other possession.   Applying the principles laid down in *Costello* v. *Edson, supra,* we think that the case justifies the findings and conclusion of the trial court, that the adverse possession was thus continuous up to the time of the sale to Butler, and by him thereafter. In view of the permanent improvements made by Dexter, particularly in the extensive ditching of the land; of his long-continued occupancy and use of the land as a hay farm, for which purpose only it was well adapted; of the privity of the succeeding occupation with his own, and the continuance of the use of the land for the same purposes after Dexter's death as before, excepting that it ceased to be a place of residence,—it is easy to distinguish the acts and occupancy subsequent to his death from mere acts of trespass.   Under the circumstances, they may well be considered to be such acts of possession, husbandry, and enjoyment as might be expected of the owner of that property, and not mere independent acts of trespass, without claim of title.

Order affirmed.