GEORGE Q. GLOVER v. RUSSELL SAGE.[1]

December 5, 1902.

Nos. 13,152—(95).

**Adverse Possession—Judgment notwithstanding Verdict.**

Evidence considered, and it is *held* that the court below should have ordered judgment for the defendant, the fee owner of the land in controversy, notwithstanding the verdict of the jury, in effect, that plaintiff and his grantors had been in adverse possession for more than fifteen years prior to the commencement of this action.

Action in the district court for Swift county to determine the adverse claim of defendant, as assignee in trust for the Hastings & Dakota Railway Company, to a quarter section of land in possession of plaintiff. The case was tried before Qvale, J., and a jury, which rendered a verdict in favor of plaintiff as to the north half of the quarter section. From an order denying a motion for judgment in his favor notwithstanding the verdict, but granting a

[1] Reported in 92 N. W. 471.

motion for a new trial, defendant appealed. Reversed, and judg-
ment ordered for defendant.

*Owen Morris*, for appellant.

*C. W. Stanton*, for respondent.

COLLINS, J.

This was an action to determine an adverse claim made by the
defendant to a quarter section of land in plaintiff's possession.
The former, as assignee, is concededly the owner, unless the plain-
tiff has acquired title thereto by adverse possession. The jury
found that he had so acquired title to the north half of the quarter
section. Defendant's counsel then made the alternative motion for
judgment notwithstanding the verdict, or, in case such motion
should not be granted, for a new trial. The court below denied the
motion for judgment, but granted a new trial upon the ground of
the insufficiency of the evidence to sustain the verdict, and there-
upon defendant appealed.

It is contended by counsel for the latter that his client is entitled
to judgment, because the evidence is uncontradicted that prior to
the year 1898 there was no adverse or hostile occupancy or pos-
session of any portion of the land by plaintiff's grantors. It is
beyond dispute that for many years this tract, with others, was in
controversy between two railroad companies, each claiming under
a land grant. A man by the name of Alvord did some plowing in
1879, and then cultivated a part of the quarter section for six or
seven years. He lived on adjoining land, not on this quarter. In
1889 one Sullivan bought Alvord's claim to the north 80, paying
him $40 in work and labor. Sullivan then built a small house upon
this 80, lived there, but did not assert ownership. According to his
testimony, he thought that some time in the future he might be-
come the owner. While so in occupation, he rented it from one of
the railroad companies for four or five years. He testified that his
intention was to stay upon it until he could "buy it, or get it in
some way." Sullivan sold to the plaintiff in 1898, and the latter
then took, and has since remained in, possession. The house was
then worth at least $125, and some fall plowing had been done
upon land already under cultivation.

We have fairly stated the substance of the testimony as to

adverse possession by plaintiff's predecessors and grantors, and upon which he must rely, prior to the time of his purchase in 1898. The evidence conclusively shows that not one of the persons who preceded plaintiff claimed adversely to the true owner. They were simply waiting for the real ownership to be determined.

To acquire title by adverse possession, such possession must be actual, visible, exclusive, as well as hostile, for the statutory period of fifteen years. It must be such possession as will operate as unambiguous and unequivocal notice to the true owner that another person is in possession, in hostility to his title, under claim of right. The acts of the person in possession must be such as to indicate that a permanent occupation and appropriation of the premises are intended, as distinguished from a casual trespass or occupancy for some temporary purpose; and, while the question of adverse possession is usually one for the jury, to be determined by all of the circumstances in evidence, it is obvious to us that no such possession was shown in this case. It was clearly established by the proofs, and without dispute, that until the year 1898, when plaintiff himself bought out Sullivan, the possession was not adverse or hostile, or even claimed to be. It was subject to the rights of others, and in subordination to the title of the true owner. When the time came, both Alvord and Sullivan proposed to submit to a third person's assertion of ownership. This was shown by the testimony of the parties themselves, and by the fact that for four or five years, from 1894 to 1898, inclusive, Sullivan rented the premises in dispute from one of the railway companies. The facts fall far short of those appearing in Wood v. Springer, 45 Minn. 299, 47 N. W. 811, to which special attention has been called by plaintiff's counsel.

It is also certain that this is not one of the cases where the defects in the evidence are of such a character that they may be supplied upon another trial, and for that reason bring the case within the rule laid down in Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958. Plaintiff's counsel does not contend that at another trial a different and sufficient state of facts might be shown.

The order granting a new trial is reversed, and upon remittitur judgment will be entered in favor of the defendant.