### WILLIAM NICHOLSON v. CHESTER A. CONGDON.[1]

June 16, 1905.

Nos. 14,247—(84)

**Public Land—Title of Purchaser.**

In April, 1872, plaintiff executed a power of attorney to T. B. Walker; thereby authorizing him to sell and convey all lands then owned by plaintiff, or of which he might thereafter become the owner or in any way interested. Thereafter, on June 25, 1872, plaintiff made application to enter the land in controversy in this action under the provisions of the treaty of February 22, 1855 (10 St. 1165), between the United States government and the Mississippi band of the Chippewa Indians, which application was duly accepted and approved by the land department, though the purchase price required to be paid by the terms of the treaty did not accompany the same. On June 27, two days following the application to locate the land, Walker, acting under the power of attorney, conveyed all of plaintiff's title and interest therein to one Butler. Defendant has succeeded to the Butler title. The purchase price of the land was subsequently paid to the government, and a patent thereafter issued to plaintiff for the land. It is *held*:

1. That the application to locate the land, having been accepted and approved by the Land Department, vested in plaintiff an equitable title, even though the purchase price was not then paid, which passed by the deed from Walker to Butler.

2. That the subsequent payment of the purchase price and the issuance of the patent perfected title in plaintiff as of the date of the application.

---

1 Reported in 103 N. W. 1034.

. Action in the district court for Itasca county to determine the adverse claims of defendant to certain vacant and unimproved land. The case was tried before McClenahan, J., who found in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*J. N. True,* for appellant.

· The privilege provided in the sixth article of the treaty [quoted in the opinion] in favor of a special class of individuals was a valuable pre-emption right purely and simply, accorded to a few individuals only. And no conveyance or agreement to convey a pre-emption claim prior to final proof and payment for the land is valid or will pass any rights to the land. Fraser v. Ringgold, 3 Land Dec. 69, 71; Tagg v. Jansen, 16 Land Dec. 113; Frisbie v. Whitney, 9 Wall. 187; The Yosemite Valley Case, 15 Wall. 77; Camp v. Smith, 2 Minn. 131 (155); Dole v. Wilson, 20 Minn. 356.

At the date of the alleged deed to Butler, June 28, 1872, there was no property in Nicholson in existence upon which the alleged powers in the power of attorney could operate, and hence no right in the land could possibly be passed through or by the alleged power of attorney. It is the case of a contract being void because the subject matter of the contract does not exist. 20 Am. & Eng. Enc. (2d Ed.) 830; 9 Cyc. 400; Gibson v. Pelkie, 37 Mich. 380.

*Billson & Congdon,* for respondent.

At the date of the deed to Levi Butler, Nicholson had an interest in this land, within the meaning of the power. The entire contention of appellant rests upon the mistaken assumption that the patent for this land is to be regarded as issued after the date of the deed to Butler. Although this is true in fact, it is not true in legal contemplation. In the eye of the law, the proceedings for the acquisition of tittle to this land from the government were an entirety and all occurred upon the date of the initial step. The doctrine of relation applies and carries the operation of the patent back to the date of the application, from which date, for such purposes as these, Nicholson must be deemed to have been owner in fee. Shepley v. Cowan, 91 U. S. 330, 337; McCreery v. Haskell, 119 U. S. 327, 330; Lone Tree v. Cyclone, 15 So. Dak. 519; Note on Relation, 15 Am. Dec. 254, etc.

The only instances in which rights to government land have been denied the assignable quality naturally inherent in all property, are those in which the right to assign has been negatived expressly or by clear implication. Assignability is the rule. Webster v. Luther, 163 U. S. 331; Beley v. Naphtaly, 169 U. S. 353, 363.

BROWN, J.

An action to determine adverse claims to certain real property, in which, after trial before the court below without a jury, defendant had judgment, and plaintiff appealed from an order denying his motion for a new trial.

The facts are as follows: The land in controversy was patented to plaintiff under and pursuant to the provisions of the treaty of February 22, 1855 (10 St. 1165), between the United States government and the Mississippi band of the Chippewa Indians. At the time of the ratification of that treaty plaintiff was, by authority of law, residing in the territory thereby ceded, and became entitled to enter one hundred sixty acres of the ceded land at the price of $1.25 per acre.

On or about April 1, 1872, plaintiff executed and delivered to Thomas B. Walker a power of attorney authorizing him (said Walker), for and on behalf of plaintiff, to sell and convey any land which plaintiff then owned, or might thereafter acquire or become seised of, or in which he might then or thereafter be in any way interested. The court found that this power was executed in view of plaintiff's right to enter certain land under the terms of the treaty aforesaid, in anticipation that he would do so, and in pursuance of a contract between plaintiff and Walker by which Walker obligated himself to pay plaintiff the sum of $150 for his interest in the land. On June 26, 1872, plaintiff made application at the proper United States land office to locate this particular tract of land under the terms of the treaty, which application was in all things regular and in conformity to law, and was duly accepted and approved by the register and receiver. On June 28, 1872, two days after the above application was filed at the local land office, Walker, acting under the authority conferred by the power of attorney, sold and conveyed the land so located, with other land, to Levi Butler; and the title thus transferred and vested was subsequently acquired by defendant in this action, under and through which he now claims to own the land.

Plaintiff paid no attention to the land after filing his application to enter the same, paid no taxes thereon, and made no claim of title to it for a period of over thirty years, when he brought this action to determine adverse claims; basing the same on the contention that, at the time Walker conveyed to Butler, plaintiff had no title or interest in the land which was or could be transferred by that conveyance. This contention is founded on the fact that plaintiff did not at the time he filed his application to enter the land pay the purchase price therefor, and it is insisted that he acquired no right, title, or interest in the land until such payment had been made. It appears from the record that payment for the land was not made until the month of November following the date of the application. The money was then paid, and the patent was subsequently issued to plaintiff by the government. Plaintiff further contended on the trial in the court below that he never executed the power of attorney to Walker, and that his signature thereto was a forgery. The trial court found the facts substantially, but more in detail, as outlined above, and against plaintiff's claim that the power of attorney was a forgery.

The assignments of error in this court present for consideration two principal questions: (1) Whether the findings of fact are sustained by the evidence—particularly the finding that plaintiff executed the power of attorney; and (2) whether plaintiff, by his application to enter the land, acquired, in the absence of payment of the purchase price at the time the application was made, any right, title, or interest in the land, which passed by the deed from Walker to Butler.

1. Our examination of the record leads to the conclusion that the findings of the trial court in the respect stated and in all other particulars are amply sustained by the evidence. It would serve no useful purpose as a precedent to enter into a discussion of the evidence, and we refrain. We have carefully examined it, and the result stated is the only reasonable one the facts and circumstances disclosed warrant.

2. The question whether plaintiff acquired any right or interest in the land by his application to enter the same—such application not being accompanied by payment of the purchase price—must be determined from the construction of article 6 of the treaty under which the entry was made, which is as follows:

> Art. 6. The missionaries and such other persons as are now, by authority of law, residing in the country ceded by the first article of this agreement, shall each have the privilege of entering one hundred and sixty acres of the said ceded lands, at one dollar and twenty-five cents per acre; said entries not to be made so as to interfere, in any manner, with the laying off of the several reservations herein provided for. Comp. of Indian Treaties (1873 Ed.) 270, 10 St. 1169.

The contention of appellant is that the treaty extended to those coming within its provisions, as a personal privilege, the right to enter and locate the quantity of land there mentioned, and that an entry thereunder could not become effectual for any purpose until the purchase price was paid. We are unable to concur in this view of the case. The power of attorney given to Walker fully authorized him to convey any land belonging to plaintiff, or in which he had any conveyable interest; and if by the application to locate the land in question, which was approved and allowed by the local land officers, plaintiff acquired any interest therein, legal or equitable, it passed by the Walker deed, executed two days subsequent to the entry. It cannot be seriously doubted that an application to enter land under the preemption or homestead acts of Congress, which is accepted and approved by the Land Department, vests in the entryman legal and equitable rights, which, in the absence of the provisions of those acts restricting the right of alienation, would be transferable by assignment, under the elementary rule that rights in real property, legal, equitable, or contingent, are assignable, not as against the government, but as between individuals, and precisely as rights in other realty are assignable.

It was held by this court in Gilbert v. McDonald, 94 Minn. 289, 102 N. W. 712, that a soldier's additional homestead entry vests in the entryman an equitable title to the land entered, which might be transferred and assigned, before final proof or patent was issued, and that when the patent was subsequently issued it related back to the date of entry. The same principle was laid down in Webster v. Luther, 163 U. S. 331, 16 Sup. Ct. 963. And even in cases of homestead or pre-emption entry the Supreme Court of the United States

has, notwithstanding the prohibitions against alienation, held that entrymen under those acts acquire certain vested rights at the date of the entry, which ripen into full title upon the issuance of a patent, and that when issued the patent relates back to the date of entry, and confirms and effectuates rights acquired at the time of the entry.

In Shepley v. Cowan, 91 U. S. 330, 338, speaking of rights acquired by a pre-emptor or homesteader, the court said: "In those cases the court only decided that a party, by mere settlement upon the public lands with the intention to obtain a title to the same under the pre-emption laws, did not thereby acquire such a vested interest in the premises as to deprive Congress of the power to dispose of the property; * * * but whilst, according to these decisions, no vested right as against the United States is acquired until all the prerequisites for the acquisition of the title have been complied with, parties may, as against each other, acquire a right to be preferred in the purchase or other acquisition of the land, when the United States have determined to sell or donate the property. In all such cases the first in time in the commencement of proceedings for the acquisition of the title, when the same are regularly followed up, is deemed to be the first in right."

The doctrine in that case was followed and applied in Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350, where the court said: "And as to mere settlement with the intention of obtaining title under the pre-emption laws, while it has been held that no vested right in the land as against the United States is acquired until all the prerequisites for the acquisition of the title have been complied with, yet rights in parties as against each other were fully recognized as existing, based upon priority in the initiatory steps, when followed up to a patent. 'The patent which is afterwards issued relates back to the date of the initiatory act, and cuts off all intervening claimants.'"

In French v. Spencer, 21 How. 228, it appeared that the government had authorized the issuance of land warrants to Canadian volunteers in the War of 1812, and that certain land was located by one holding such a warrant, who a few days thereafter sold and conveyed the same to a third person. It was held that the conveyance was sufficient to pass the interest of the locator under the land warrant, and

95 M.—13

that the patent subsequently issued related back to the date of the original entry.

In Lone Tree v. Cyclone, 15 S. Dak. 519, 91 N. W. 352, riparian rights of a pre-emptor were involved, prior to the issuance of a patent; and it was held that the rights of the entryman attached from the date of his settlement upon the land, and not from the date of his final proof. See also Beley v. Naphtaly, 169 U. S. 353, 18 Sup. Ct. 354; McAlpine v. Resch, 82 Minn. 523, 528, 85 N. W. 545. In Thredgill v. Pintard, 12 How. 24, the court recognized the right of a person in possession of public land under a pre-emption claim to convey such right to another.

In view of the principle established by these cases—particularly the case of Gilbert v. McDonald, supra—and in view also of the provisions of the treaty under which the land in question was acquired, it must be held that plaintiff acquired an equitable title to the land at the time of his application, which passed by the Walker deed. The case is even stronger than those arising under the homestead or preemption laws, for here the treaty contains no provision against a sale or transfer, prior to the issuance of the patent, of the land located thereunder. The rights granted by the treaty were in their nature contractual, and, upon a selection and location of land thereunder, the interests of the party locating became definitely fixed; vesting in him an estate which he could convey before payment of the purchase price or issuance of the patent. Of course, if, in any case, payment of the purchase price should not be subsequently made, the location would lapse and become ineffectual for any purpose; but if made, and patent subsequently issues, the doctrine of relation applies, and title in the patentee is vested as of the date of his application. Shepley v. Cowan, supra; McCreery v. Haskell, 119 U. S. 327, 330, 7 Sup. Ct. 176.

Order affirmed.