## JOHN G. KRUEGER v. EDWARD MARKET.[1]

January 23, 1914.

Nos. 18,474—(299).

**Adverse possession.**

1. To establish title to real estate by adverse possession, such possession must be shown for the full statutory period of 15 years.

[1] Reported in 145 N. W. 30.

---

Note.—As to the effect of abandonment on title to real property acquired by adverse possession, see note in 24 L.R.A.(N.S.) 1161.

**Same — insufficient evidence.**

2. To constitute adverse possession, the possessory acts must appear upon the land itself and be such as to indicate an intention to appropriate it permanently. Giving permission to a third party to cut hoop poles thereon and receiving pay for such poles is not sufficient to establish such possession.

**Same — payment of taxes.**

3. The payment of taxes, although evidence of a claim of title, is not evidence of adverse possession.

**Abandonment.**

4. A perfect legal title to real estate is never lost by abandonment.

Action in the district court for Rice county to determine adverse claims. The facts are stated in the opinion. The case was tried before Childress, J., who found that plaintiff was the owner in fee simple of the premises described at the beginning of the opinion. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*John F. Byers* and *S. R. Child,* for appellant.

*E. H. Gipson,* for respondent.

TAYLOR, C.

Plaintiff brought this action to determine adverse claims to the south half of the northeast quarter of the northeast quarter of section 17 in township 110 of range 20, and other adjoining lands, all situate in the county of Rice, and alleged that he was the owner and in the actual possession of the same. Defendant interposed an answer, in which he admitted plaintiff's possession, but set forth a complete chain of title to himself from the United States for the 20-acre tract above described; and alleged that he was the owner and entitled to the possession thereof, and asked judgment that he recover such possession. Plaintiff in reply admitted defendant's chain of title, but alleged that he and his predecessors in interest had been in actual adverse possession of the land for more than 15 years before the commencement of the action. At the trial plaintiff relied solely upon the claim of adverse possession to establish his title. Defendant is the owner of the land, unless his title has been

divested by such adverse possession. The trial court found as a fact that plaintiff and his predecessors in interest had been in the actual adverse possession of the land for more than 15 years immediately preceding the commencement of the action, and rendered judgment, decreeing that plaintiff was the owner in fee simple thereof and that defendant had no interest therein. Defendant appealed from the judgment. The sole question presented is whether the evidence is sufficient to sustain the above finding.

The land lies along the river and is of little value. Some seven or eight acres are steep, rocky bluffs, covered with brush and small trees not large enough for timber; and the remainder is low bottomland, covered with sand deposits, intersected by bayous, and frequently overflowed. . It is used only for pasturage.

A tax-assignment certificate for the land was issued to A. D. Keyes on October 30, 1883, and was assigned by him to E. L. Frink and others, on November 28, 1885. The claim of his associates passed to Frink, and Frink deeded to John Dungay on December 24, 1896. Dungay deeded to Frank Sweet on April 27, 1897, and Sweet deeded to Frank Tetrault on September 14, 1899, and Tetrault deeded to plaintiff on December 31,.1910. Plaintiff concedes that the tax certificate conveyed no title, but presented the certificate and the chain of conveyances thereunder to show the character and extent of his claim, and to connect his possession with that of his predecessors in interest. Plaintiff and his predecessors have paid the taxes upon the land since 1883.

Sweet testified that, between April 27, 1897, when he obtained his deed, and September 14, 1899, when he conveyed to Tetrault, he built some fence and cleared a portion of the land and used it for pasture. All that he states as to when these acts took place is that they were between the dates above given. From the time that Sweet entered thereon until the commencement of the action, the land was partially enclosed and used for pasture, and firewood was occasionally taken therefrom.

The action was begun in February, 1911, and to establish adverse possession for the statutory period of 15 years, such possession must

have been initiated as early as February, 1896, and more than a year before Sweet received his deed. Frink testified that he never saw the land, but that while he claimed it, he gave permission to one Gile to cut hoop-holes thereon, and that Gile made some payments for such poles. He did not know when these poles were cut, nor how many were cut, and had no personal knowledge that they were cut upon this land. The testimony as to the cutting of these hoop-poles is the only evidence tending to show any possessory acts on the part of any of plaintiff's predecessors prior to the entry upon the land made by Sweet; and the case is narrowed down to the question as to whether the cutting of these poles, coupled with the payment of taxes for many years, is sufficient to constitute an adverse possession which can be tacked to the adverse possession established by Sweet.

What constitutes adverse possession has been before this court many times and the rule is well stated as follows:

"The general rules of law as to adverse possession are well settled. It must be actual, visible, and exclusive, as well as hostile. The doctrine proceeds upon the theory of the acquiescence of the true owner in his disseisin for the full statutory period; hence, the possession which affects him is what appears on the ground itself. It must be such as would operate as unambiguous and unequivocal notice to him that some one is in possession in hostility to his title under claim of right; and, while much will depend on the nature and situation of the property and the uses to which it is adapted, yet in all cases it must be a possession which is accompanied with the real and effectual enjoyment of the property,—the possession which follows the subjection of the property to the will and dominion of the claimant to the exclusion of others. The acts must be such as indicate that a permanent occupation and appropriation of the premises is intended, as distinguished from a casual trespass for some temporary purpose. And, inasmuch as it is only the possession which appears on the ground which affects the true owner, it follows that, while such acts as paying taxes or surveying lines may characterize a possession, if it exists, as hostile, yet they do not themselves constitute

the possession which the law requires to toll the right of the true owner." Wood v. Springer, 45 Minn. 299, 47 N. W. 811.

"The acts of the person in possession must be such as to indicate that a permanent occupation and appropriation of the premises are intended, as distinguished from a casual trespass or occupancy for some temporary purpose." Glover v. Sage, 87 Minn. 526, 92 N. W. 471; Young v. Grieb, 95 Minn. 396, 104 N. W. 131; Gaston v. May, 120 Minn. 154, 138 N. W. 1025; Costello v. Edson, 44 Minn. 135, 46 N. W. 299; Wood v. Springer, 45 Minn. 299, 47 N. W. 811.

"The adverse possession which affects the rights of the true owner is what exists and appears on the land itself." Hence the payment of taxes, although evidence of a claim of title, is not evidence of adverse possession. Murphy v. Doyle, 37 Minn. 113, 33 N. W. 220; Wood v. Springer, 45 Minn. 299, 47 N. W. 811; Young v. Grieb, 95 Minn. 396, 104 N. W. 131. To constitute adverse possession there must, at all times, be some person against whom the owner may maintain an action to recover possession. City of St. Paul v. Chicago, M. & St. P. Ry. Co. 45 Minn. 387, 48 N. W. 17.

"The mere cutting and removal of timber or fuel or natural grass from unoccupied land have not generally, and under ordinary circumstances, been regarded as constituting adverse possession." Costello v. Edson, 44 Minn. 135, 46 N. W. 299; Bazille v. Murray, 40 Minn. 48, 41 N. W. 238; Washburn v. Cutter, 17 Minn. 335 (361); McRoberts v. McArthur, 62 Minn. 310, 64 N. W. 903.

In the present case it is obvious that the cutting of the hoop-poles by Gile was not for the purpose of improving the land or preparing it for use, and did not differ in kind from the act of any trespasser who should appropriate to his own use some of the natural products growing thereon. Furthermore, so far as the evidence shows, the last of this cutting may have occurred many years before Sweet took possession. The evidence is wholly insufficient to establish adverse possession at any time prior to the entry upon the land made by Sweet, and, as plaintiff must show such possession for the full statutory period, he has failed to establish title.

The suggestion is made that, as defendant had failed to pay taxes for nearly 30 years, he had abandoned the land, and upon that

ground should be barred from now asserting title thereto. A perfect legal title to real estate may be divested by adverse possession under and by virtue of the statute of limitations, but is never lost by abandonment. Smith v. Glover, 50 Minn. 58, 75, 52 N. W. 210, 912; Nauer v. Benham, 45 Minn. 252, 47 N. W. 796; Mayor, etc. of Philadelphia v. Riddle, 25 Pa. St. 259; Kreamer v. Voneida, 213 Pa. St. 74, 62 Atl. 518; East Tennessee Iron & Coal Co. v. Wiggin, 68 Fed. (C. C. A.) 446, 15 C. C. A. 510; Tennessee Oil, Gas & Mineral Co. v. Brown, 131 Fed. (C. C. A.) 696, 699, 65 C. C. A. 524; Barrett v. Kansas & T. Coal Co. 70 Kan. 649, 79 Pac. 150; Sharkey v. Candiani, 48 Ore. 112, 85 Pac. 219, 7 L.R.A.(N.S.) 791; Robie v. Sedgwick, 35 Barb. 319; Calloway v. Sanford, (Tenn. Ch.) 35 S. W. 776, 778; 23 Am. & Eng. Enc. (2d ed.) 940.

Judgment reversed.