## MINNESOTA IRON COMPANY v. IDA NOLET LIMOGES AND OTHERS.[1]

March 25, 1927.

No. 25,856.

**Pre-emptor obtains no vested rights until he pays purchase price of land he enters.**

1. The entry of government land under the pre-emption laws of the United States segregates it from other public lands. The entryman's claim continues until the entry is canceled or forfeited, but no vested rights are acquired as against the United States until the purchase money is paid and the final receipt of the land office is issued.

**Passing of legal title from pre-emptor to his grantee.**

2. After final proof has been made, the pre-emptor may transfer his rights to a third person, to whom the legal title will pass when the patent is issued, although the pre-emptor is named as the patentee. Delivery of the patent to the pre-emptor or his grantee is not essential to pass the title.

**Title obtained by impersonator could not be questioned after statutory limitation.**

3. Public land was entered under the pre-emption laws by one Louis Laroche. Final proof and payment for the land were made by

[1]Reported in 213 N. W. 51.

one Louis LaRoche. The patent was issued to him. To obtain it, he impersonated Louis Laroche. The title thus acquired could not be questioned after the expiration of five years from March, 1891, by reason of the enactment of c. 561, 26 St. L. sec. 8, p. 1099.

**Impersonator's deed conveyed all his rights to his grantee.**
    4. A warranty deed executed by Louis LaRoche after he had made final proof and paid for the land conveyed all his rights in the land to his grantee.

**Applicant entitled to register its title in fee.**
    5. The evidence shows conclusively, and the trial court found, that Louis Laroche and Louis LaRoche were different persons and that the patent was issued to the latter. These facts compel the conclusion that at the time of the commencement of this action, which is one to register the title to the land, the corporation, which acquired the title of Louis LaRoche through mesne conveyances, owns the land in fee and is entitled to a certificate of title under the so-called Torrens act, c. 305, p. 454, L. 1905.

Public Lands, 32 Cyc. p. 817 n. 46, 51; p. 828 n. 30, 32; p. 1055 n. 38; p. 1080 n. 68, 72; p. 1081 n. 76.

Application in the district court for St. Louis county by the Minnesota Iron Company to register title. There was judgment, Fesler, J., for the applicant, from which defendants appealed. Affirmed.

*Arnold & Arnold, Theo. Hollister* and *John E. Palmer,* for appellants.

*Crassweller & Crassweller,* for applicant-respondent.

LEES, C.

The respondent applied to the district court of St. Louis county for the registration of the title to 160 acres of land, pursuant to the provisions of the so-called Torrens act, c. 65, G. S. 1923. The appellants answered, alleging that they had title and praying that their title be quieted. This appeal was taken from the judgment entered on the findings.

The trial court found that on June 23, 1880, one Louis Laroche, a native of the province of Quebec, declared his intention to become

a citizen of the United States and took out his "first papers" in the office of the clerk of the district court for St. Louis county. On August 27, 1880, pursuant to sec. 2264, U. S. Rev. St. he filed in the United States land office at Duluth the declaratory statement and affidavit required by the pre-emption laws of the United States to obtain a patent to the land and paid the filing fee of $2. The declaratory statement was numbered 1697, and in all subsequent proceedings in the land office the entry was referred to by that number. In the fall of the same year, the declarant went to Quebec and never returned to St. Louis county. On August 1, 1881, he married Marie Couture Nolet, a widow. She had two children by her former husband and they are the appellants herein. The declarant died May 7, 1883, leaving his widow as his sole heir. She died January 28, 1893, leaving her two children as her sole heirs. Neither the declarant, his widow, nor her children did anything to complete pre-emption claim No. 1697.

On December 21, 1880, Louis LaRoche, who was not the same person as the declarant Louis Laroche and who is referred to in the findings as the "impersonator", appeared with two witnesses at the United States Land Office at Duluth and made the final proof of residence and cultivation required by the pre-emption laws to obtain a patent to the land and paid the purchase price of $200. The proof was accepted by the local land officers, and they issued and delivered to the impersonator a land office pre-emption receipt in the usual form. On December 22, 1880, for a consideration of $500, the impersonator executed and delivered a warranty deed of the land to Charlemagne Tower and Samuel Alfred Munson. Thereafter Munson conveyed to Tower, and he to the respondent.

The impersonator was not a native-born citizen of the United States and had not declared his intention to become a citizen when he made the final proof and obtained the pre-emption receipt. On January 3, 1881, he made an affidavit before the receiver of the land office that about two years before the date mentioned he had declared his intention to become a citizen but had lost the certified copy of the declaration which had been furnished to him by the

clerk of the district court of Ramsey county. This affidavit was false and was made with intent to deceive the officers of the land office. Thereafter, upon the refusal of the commissioner of the general land office to receive the pre-emption proofs as sufficient, the impersonator procured from the clerk of the district court for St. Louis county a certified copy of Louis Laroche's declaration of his intention to become a citizen and had it forwarded to the general land office.

On May 20, 1882, a patent was issued to the impersonator. It was delivered to his assignees and never was in the possession of the declarant or any of his heirs. The land is vacant and unoccupied. The taxes were paid by Tower until he conveyed to the respondent, and it has paid them ever since. The purchase from Tower was made for a valuable consideration, in good faith and without notice of any right, title or interest in the land on the part of the declarant or his heirs. Since March, 1913, the appellants have known that the title was held by the respondent adversely to the claim they now assert.

Upon these findings the court held, as a matter of law, that the appellants have no right, estate, or interest in the land, and granted respondent's application to register the title.

Appellants insist that in effect the findings establish their title and destroy respondent's claim to the land.

The Supreme Court of the United States has held that the effect of an entry of government land under the pre-emption laws is to withdraw the land from subsequent entry and segregate it from the mass of public land, and that the entryman acquires an interest in and a valid and subsisting claim to the land which continues until the entry is canceled or forfeited. Hastings & D. R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. ed. 363; Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350, 33 L. ed. 761; Whitney v. Taylor, 158 U. S. 85, 15 Sup. Ct. 796, 39 L. ed. 906. But no vested rights as against the United States can be acquired by anyone until all the prerequisites for the acquisition of the title have been complied with. Nicholson v. Congdon, 95 Minn. 188, 103 N. W. 1034.

In short, vested rights in the land as against the United States are not obtained until the purchase money is paid and the final receipt of the land office is issued. Frisbie v. Whitney, 9 Wall. 187, 19 L. ed. 668.

The interpretation placed on the pre-emption laws by the Supreme Court of the United States is clearly stated in Hutchings v. Low (The Yosemite Valley case), 15 Wall. 77, 21 L. ed. 82, substantially as follows: Until entry and payment for the land, the pre-emption laws give to the settler a privilege only of purchasing the land in preference to others. That in substance is the holding of this court in Red River & Lake of the Woods R. Co. v. Sture, 32 Minn. 95, 20 N. W. 229.

The history of the pre-emption laws is reviewed in Camp v. Smith, 2 Minn. 131, 138 (155, 168), where it was said:

"The right of pre-emption * * * is, simply, the right which a person, who has complied with certain requirements of the law, has to purchase a portion of the public lands at the minimum price to the exclusion of all others. It is wholly a creature of the statute, and is exercised and exhausted as soon as the purchase and entry are made. After the entry, the rights belonging to the pre-emptor as to the land are those acquired by reason of his having purchased a portion of the public lands, and are not different from the rights of other purchasers. They depend wholly upon the fact of purchase, and not of pre-emption."

Following U. S. v. Schurz, 102 U. S. 378, 26 L. ed. 167, this court has held that title by patent from the United States is title by record and that delivery of the patent is not essential to pass the title to the patentee. Rogers v. Clark Iron Co. 104 Minn. 198, 116 N. W. 739. The latter case is also authority for the proposition that, after an entryman has made final proof, he may convey the land to a third person before the patent is issued; that such a conveyance transfers all the entryman's rights; and that when the patent is issued in the name of the entryman, it vests in his grantee the full beneficial ownership and legal title to the land by operation of the doctrine of relation or enforced estoppel.

Louis Laroche never paid for the land and never made the final proofs required by the public land laws. He seems to have abandoned the land without perfecting any inchoate rights he may have acquired by filing his declaratory statement.

The name of the declarant was written "Louis LaRoche" in the body of his declaratory statement and affidavit, but he signed his name "Louis Laroche" wherever his signature appears on any of the documents included in the record. The record shows conclusively that Louis LaRoche and Louis Laroche were not the same person and that the former made the final proof and paid for the land. The fact that the patent was issued to Louis LaRoche is determinative of the case and establishes the correctness of the conclusion of law.

A statute of the United States, enacted in March, 1891, sec. 8, c. 561, 26 St. p. 1099, (8 Fed. St. Ann. [2d ed.] sec. 8, p. 869) provides that suits by the United States to vacate or annul a patent theretofore issued must be brought within five years from the passage of the act. In U. S. v. Chandler-Dunbar W. P. Co. 209 U. S. 447, 28 Sup. Ct. 579, 52 L. ed. 881, it was held that a suit by the United States for the annulment of a patent issued prior to the date of the enactment of the statute must be brought within five years, no matter what the mistake or error of the land department may have been and regardless of the frauds and misrepresentations of the patentee; that after five years the patent becomes conclusive as a transfer of the title, provided only that the land was public land and open to sale and conveyance through the land department; and that, unless a suit to annul a patent, void when issued, is brought within the prescribed period, the patent becomes good and has the same effect as though it had been valid in the first instance.

Since the United States can no longer question the title of the patentee, and since Louis LaRoche and not Louis Laroche is the patentee and it is not sought to impress a trust on the land in favor of the appellants, the respondent has all the rights it would have had if the patentee had obtained a valid patent.

It is argued that, since public officers are presumed to observe the law, the land office officials could not have intended to issue the

patent to the impersonator; that by the very act of issuing and recording it the United States transferred the legal title to Louis Laroche; that a legal title cannot be lost by abandonment, Krueger v. Market, 124 Minn. 393, 145 N. W. 30, or by laches, but see St. Denis v. Mullen, 157 Minn. 266, 196 N. W. 258; and that under the doctrine of Duncan Townsite Co. v. Lane, 245 U. S. 309, 38 Sup. Ct. 99, 62 L. ed. 309, neither Tower, Munson, nor Tower's grantee acquired the rights of a good faith purchaser.

We find it unnecessary to consider any of these contentions. We think the case is controlled by the vital fact already mentioned. Louis LaRoche, the impersonator, procured the patent. No proceedings to annul or vacate it were instituted. It now has the same effect as a valid patent. It gave him title to the land, and respondent has succeeded to the title he secured.

We note the argument in appellants' reply brief, where it is said:

"The General Land Office officials had no man personally before them. They had a man before them of record and one man only. That man was the pre-emptor Louis Laroche. * * * In the eye of the law there were not *two* men. The officials at Washington * * * found and determined that there was but *one* and that one was the pre-emptor Laroche."

Undoubtedly the officials supposed that Louis LaRoche and Louis Laroche were one and the same person, but in this they were mistaken. There were two men, one the true Louis Laroche, the other the man who impersonated him successfully and so obtained the patent.

All else aside, this fact compels the conclusion that the trial court rightly held that the title passed to the impersonator and by his warranty deed to Tower and Munson, and by Tower's deed to respondent.

The judgment is affirmed.