## R. A. ELLIOTT v. INA G. NELSON ET AL.

### No. 3380.   Decided May 23, 1923.

### (251 S. W., 501).

**1.—School Land—Patent—Equitable Interest.**

The purchaser of school land acquires an equitable title, convertible into legal title on the issuance of patent by the State. This, when obtained related to the inception of title, and, though issued to an assignee, inured to to the benefit of any other holder of the equitable title or of an equitable interest in the land, such title or interest prevailing over that of the patentee. (Pp. 69, 70).

**2.—Same—Case Stated.**

A purchaser of school land, with right to patent and legal title on completion of the deferred payments to the State therefor, sold same reserving to himself title to all minerals therein. The land having been patented later to a remote assignee on completion of the payments to the State, the original purchaser acquired by such patent title to his former equitable interest in the minerals reserved in his sale of his equitable interest in the land. (Pp. 65-70).

**3.—Same—Minerals—Oil and Gas—Deed—Reservation.**

A reservation to the grantor of title to all "minerals" in the land conveyed includes and reserves title to oil and natural gas. (Pp. 70, 71).

**4.—Limitation—Adverse Possession—Separation of Title to Minerals.**

Where by the terms of a deed title to the minerals in the soil is separated from that to the land and vested in different owners, the possession and use of the surface soil without attempt to appropriate the minerals (oil and natural gas) is not adverse to the owner of the latter nor a basis for limitation against his rights. Neither will his right to them be lost by laches through his failure to seek to appropriate them where the deed contained no limitation on the time within which this was to be done. (Pp. 71, 72).

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Shackelford County.

The questions being referred by the Supreme Court to the Commission of Appeals, Section B, for their opinion thereon, this, being approved by the Supreme Court, is here adopted as its answer thereto.

*W. L. Morris* and *A. A. Clarke,* for appellant.—The filer could alienate this inchoate right, but only such interest as the filer had at the time of the alienation. The title to the minerals remained in the State until the land was paid out. Any attempt by the first filer on his payment of $16.00 of the principal to alienate the surface of the land with a reservation of the minerals in the land was null and void as to the minerals. The filer had nothing to reserve. See the Act of July 8th, 1879, beginning at the bottom of page 55 of Volume 9 of Gammel's Laws of Texas; Also the Act of April 6th, 1881, amending the Act of 1879, same Volume, beginning at bottom of page 211; Constitution of Texas, Sec. 4, Art. 7. See particularly Sec. 15 of the Act of July 8th, 1879; Greene v. Robison, 210 S. W., 498.

If the issuance of the patent has the effect to convert her equity into legal demand same is barred by the Statute of Limitations pleaded by plaintiff. The evidence shows that the predecessors in title of the plaintiff not only held possession of the surface of the land adversely to all the world, but asserted title in the oil and gas under said land by leasing the land to oil and gas companies for oil and gas development, which leases were put on record over five years before the institution of this action.

We submit that the leasing of the mineral rights, to the Texas Company, the assignment of that lease to the Producers Company and the cancellation of the lease, all duly recorded in the proper county would be as effectual to put the owner on notice of the adverse claim of the surface owner as would the erection of a derrick upon the premises.

The holder of a mere equity who sleeps on his rights for twenty-nine years and asserts no claim to the thing to which his equity attaches and pays no taxes on the property and does not render same for taxation is guilty of laches and is barred in equity.

A reservation of ''all the minerals'' in the land contained in a deed in a country where and at a time when the existence of oil and gas was never dreamed of by the inhabitants of that country and where it was known that coal and copper etc. had been found, will be construed to apply only to such minerals, coal, copper, etc., as were generally understood by the people of the locality to be embraced within the term ''mineral'' and will not be construed to include oil and gas. Detlor v. Holland, 57 Ohio St., 492, 49 N. E., 690, 40 L. R. A., 266, where this precise question was decided as herein contended. See also Dunham v. Kirkpatrick, 101 Pa. St., 36,

47 American Rep., 696. These and other cases are cited in Thornton on Oil and Gas, Sec. 304.

*Snodgrass, Dibrell & Snodgrass,* for appellees.—The right of a purchaser from the State who has made the initial payment and executed his obligations covering the remainder of the purchase price to the State, to make a sale of the land, is clearly recognized in numerous cases. Gunnels v. Cartledge, 64 S. W., 806; Bumpass v. McLendon, 101 S. W., 491; Chancy v. State, 84 Texas, 529; Holman v. Pinkard, 176 S. W., 791; Clark v. Altizer, 145 S. W., 1041; Hollis v. Myers, 179 S. W., 57.

The clause in the deed of E. T. Hilliard, reserving all minerals in and under the lands conveyed, not being limited or qualified as to intention by any other clause of the deed embraces and saves to said Hilliard all minerals including petroleum, oil and natural gas. Luse v. Boatman, 217 S. W., 1096; State of Texas v. Parker, 61 Texas, 265; Porter v. Mack Manufacturing Co., 65 W. Va., 636, 64 S. E., 853; Sult v. Hochstetter Oil Co., 63 W. Va., 317, 61 S. E., 307; Williams v. South Penn. Oil Co., 52 W. Va., 181, 43 S E., 215, 60 L. R. A., 795.

The minerals in the land in controversy, by the reservation in the deed of E. T. Hilliard, were completely severed from the surface of the land as much so as if they were two separate and distinct parcels of land. No hostile title to said minerals under the statute of limitations could be subsequently acquired by mere adverse possession of the surface of said land for any statutory period, and the Appellants never having subsequently acquired or held adverse possession of the minerals were properly denied recovery on their pleas of limitation. No mining operation of any character was ever conducted on said land. Luse v. Boatman, 217 S. W., 1096; Scott v. Laws, 215 S. W., 81; Northcut v. Church, 188 S. W., 220; Gordon v. Park, 100 S. W., 621; Murray v. Allard, 43 S. W., 355; Kentucky Block Cannel Coal Co. v. Sewell, 1 Amer. Law Rep. Annotated, 566; Manning v. Kansas T. Coal Co., 81 S. W., 140; Gordon v. Parker, 117 S. W., 1163; Plant v. Humphreys, 66 W. Va., 88, 66 S. E., 94; Kiser v. McLean, 67 W. Va., 294, 67 S. E., 725; Morison v. American Association, 110 Va., 91, 65 S. E., 469; 2 American & English Annotated Cases, 636; 2 Corpus Juris, 147, Section 258; 1 Cyc, 994; Thorton Oil & Gas, 1st Ed., Chap. 13, Sec. 295; 18 R. C. L., Secs. 84 and 85.

*J. W. Powell* (with Snodgrass, Dibrell & Snodgrass) filed argument and citations on similar questions in Green v. West Tex. Coal Min. & Dev. Co.

*Lee, Lomax, Wren & Smith,* as *amici curiae*, filed brief and argument in support of the position of appellees.

MR. JUDGE HAMILTON delivered the opinion of the Commission of Appeals.

This case presents questions certified to our Supreme Court by the Court of Civil Appeals for the Second Supreme Judicial District. Omitting portions not necessary to quote, the certificate reads:

"The appellant, R. A. Elliott, on April 1, 1919, instituted this suit against the unknown heirs of E. T. Hilliard in the usual form of trespass to try title to recover the land hereinafter mentioned, with special allegations to the effect that the defendants were claiming mineral rights under a deed from E. T. Hilliard to Joseph Holt, dated February 2, 1883, to the east half of section No. 38, surveyed by the Texas & Pacific Railway Company as an alternate or public school section and situated in Shackelford and Stephens counties. The plaintiff further specially pleaded the five year statute of limitation.

"On June 5, 1919, Ina G. Nelson, joined by her husband, John R. Nelson, appeared and answered, declaring herself to be the sole heir of E. T. Hilliard, deceased. She denied the allegations of plaintiff's petition, and by cross bill alleged that she was the owner in fee simple of all minerals in the land described in said petition and she prayed judgment therefor.

"The trial resulted in a judgment for Mrs. Nelson, and the plaintiff has appealed and the appeal is now pending before us.

"The material questions involved arise from the following state of facts:

"The land in controversy is known as the east half of section No. 38 in block No. 7, of the surveys made by the Texas & Pacific Railway Company, same being state school land and was appraised and classified under the Act of July 8, 1879, as amended by the Act of April 6, 1881, and duly placed on the market. It was classified as dry grazing and appraised at $1 per acre. At that time all of this half section was in Stephens County, but later by the location of a new county line a part of the tract was included in Shackelford County. On January 3, 1882, E. T. Hilliard duly filed his application to purchase this half section, under said Act of 1881, and same was awarded to him. He made the first cash payment, $16, and executed his obligation to the State for $304 for the balance of the purchase money, as required by the Act of the Legislature referred to. Afterwards, on the 2nd day of February, 1883, E. T. Hilliard, as party of the first part, sold this tract to Joseph Holt for a cash consideration of $200 and 'for the further consideration mentioned,' and executed and delivered to said Holt a deed to the land, which deed contains this clause:

'It is further considered and agreed between the parties hereto as a part of the consideration hereof that the said party of the first
113  Tex.—5.

part hereby reserves the right to and proprietorship of all minerals in, upon and under the said land, together with the free and unimpeded right of entry thereto and to operate for and pursue and remove the same if any be found and of prospecting therefor for himself, his agents, employees and assigns and their agents and employees provided there shall be by said party of the first part, his agents or assigns no wanton damage done to or destruction of any improvements or buildings by said party of the second part erected upon said land and the party of the second part hereby accepts this conveyance with all consideration and conditions herein named as for himself and his heirs and assigns forever.'

"This deed was duly recorded, and later filed in the general land office on February 10, 1890, and on March 28th of that year the unpaid money having been paid (by whom it does not appear), the land was patented to Joseph Holt 'as assignee' of E. T. Hilliard. The patent contains no reservations or exceptions. Through a long chain of deeds and judicial proceedings, whatever title the patent vested in Joseph Holt became vested in one J. A. Sullivan, who, on October 11, 1917, conveyed the land to the appellant, R. A. Elliott and his wife. This deed contains the following clause:

'It being understood that this deed conveys all right, title and interest of the grantors in the above described land, but it is further understood that the grantors do not claim and do not intend to convey the mineral rights in and under the East ½ of Survey 38, Block 7, T. & P. Ry. Company lands.'

"Later, after the appearance and answer of Ina G. Nelson, towit, on the 19th day of September, 1919, Sullivan, and wife executed another deed to the same land to R. A. Elliott and wife without exceptions and with general warranty.

"As related to the issue of limitation, it was shown that W. R. Whitehead, the immediate predecessor of J. A. Sullivan in title, on July 2, 1909, leased the whole of section 38, block 7, to the Texas Company for oil and gas development; this lease was seasonably re-recorded in Shackelford and Stephens counties, but was later, towit, on July 1, 1913, assigned by the Texas Company to the Producers Company, which in turn cancelled the lease on August 27, 1913.

"No adverse claims to the minerals other than as indicated by said lease were made prior to the institution of this suit, nor was any effort ever made to explore the land for minerals or to take actual possession thereof. Appellant, Sullivan and Whitehead, however, claiming as owners, held actual possession of the half section of land in controversy for at least the full period of five years prior to the institution of the suit, paying all taxes due thereon.

"The appellant Elliott testified, among other things, that he was 55 years of age and had lived in Shackelford County, with the exception of two years, since 1877, and further testified that:

'In 1881, 1882 and 1883 there was not any character of mining going on in Stephens County that I know of. There was not any mining going on in Shackelford County that I know of. There was not anybody mining for anything in the counties that I can now recall in 1881, 1882 and 1883. Well I do not remember what year but I know that some coal mines—that there were some coal mines over in toward Graham, some place. That was years ago. I do not remember what year. Also had some copper mines a little west of here.'

"Judge B. F. Reynolds testified to the effect that he had lived in Throckmorton County since 1859, and further testified:

'I do not know whether or not there was any coal being mined or attempted to be mined in Stephens County in 1881, 1882 and 1883. There was some coal found. There was some discovery of coal down there. That discovery was in. above Crystal Falls there. I could not say the year. It has been many years ago. I do not know just—must have been as early as before 75—before 1875. Crystal Falls is in Stephens County I believe. That was above Crystal Falls, in about the mouth of King Creek—right on the Clear Fork of the Brazos. During the years 1880, 1881, 1882 and 1883 I never heard anybody discuss the existence of natural gas and coal—oil, in this section of the country. I never heard it mentioned during that time. I have been hearing it mentioned for the last ten years. I never heard of either gold or silver being mined up there. I never heard of any copper being mined in this county. Some was up in Stonewall County—I first heard of copper up in Stonewall County twenty or thirty years ago. It was a long time ago. There was some mining up there.'

"The record is silent as to whether either E. T. Hilliard or Joseph Holt at the time of the conveyance to Holt knew or had ever heard of oil or gas, or had ever heard or discussed the possibility or probability of either oil or gas or other minerals being in or under the land in controversy.

"It is undisputed that at the time of the said purchase by E. T. Hilliard and of his conveyance to Holt that the appellee, Ina G. Nelson, was the lawful wife of said E. T. Hilliard, long since deceased, and is now his sole and only heir, entitled to recover whatever interest, if any, that exists by virtue of the reservation in the deed from Hilliard to Holt; and she testified that she first learned of an adverse claim to the mineral rights in the land in controversy in June, 1919.

"  . . . We deem it advisable to certify to your Honors for determination the following questions arising upon the facts heretofore stated:

"1. Did E. T. Hilliard by his purchase from the State acquire any interest or right to the minerals in and under the land so purchased to which the reservation in his deed to Holt attached and became operative and effective?

"2. If question No. 1 be answered in the affirmative, then did the reservation include within its operative effect oil and gas?

"3. If question Nos. 1 and 2 be answered in the affirmative, then is Mrs. Ina G. Nelson precluded from a recovery herein by either the state patent to Holt or by laches or limitation?"

The Act of April 6, 1881, Gammel's Laws of Texas, vol. 9, p. 211, amended only the first eight sections of the Act of July 8, 1879, Id. p. 55. The statute governing the sale of land, at the time Hilliard filed his application to purchase the land involved in this suit, consisted of the Act of April 6, 1881, which thereby was substituted for and instead of the first eight sections of the Act of July 8, 1879, and of the remaining sections of the last mentioned Act they being sections 9 to 20, inclusive, thereof. The Act of·April 6, 1881 provides that any person desiring to purchase any of the lands referred to therein shall make application in writing to the county or district surveyor designating and stating the amount he desires to purchase. The surveyor was required to record the application and to endorse it "recorded" etc. and to deliver it to the proposed purchaser. The purchaser was then required to forward immediately the application, together with one-twentieth of the appraised value of the land, to the State Treasurer. The Treasurer was required to enter a credit on his books in the name of the purchaser for the amount so received, giving such description of the land as would identify it, and then to issue his receipt for said amount and forward it with the application to the Commissioner of the General Land Office who was required to file the application and receipt in his office and issue his certificate in lieu thereof, setting forth the amount paid to the Treasurer and the quantity and valuation of the land applied for. This certificate authorized the county or district surveyor to survey the land embraced in the original application and to enter the same on his books as "sold." The statute further provided that he should not "entertain another application to purchase lands until notified of the forfeiture as hereinafter specified." Secs. 6 and 7, Act approved April 6, 1881; Gammel's Laws of Texas, vol. 9, pp. 120-121. Section 8 of that Act provides that the applicant ·shall execute his obligation or .promissory note for the balance of the appraised value of the land he desires to purchase, agreeing and stipulating to pay to the Governor of the State of Texas and his successors in office, on

the first day of January of each year, one-twentieth of the amount of his obligation or promissory note with eight per cent interest on such amount of the principal as may be due at the date of each payment.

Section 12 of the Act of July 8, 1879, Gammel's Laws, vol. 9, p. 26, reads:

"If, upon the first day of March following the maturity of any payment, the interest on money due has not been paid to the State Treasurer, and his receipt filed with the Commissioner of the General Land Office as provided in section eleven of this act, it shall be the duty of said Commissioner to notify the county or district attorney of the county in which such land is situated of such failure, giving the name of the purchaser so failing to make payment, with the amount and date of his note, and the amount of principal and interest due at the time of such failure; and upon the receipt of such notice it shall be the duty of the county or district attorney to cause a writ to be issued and served on the purchaser, or, in the case of his death, upon his heirs or legal representatives requiring him or them to show cause why he or they should not be ejected from such land; and upon his or their failure to show that the annual installments of interest have been paid, as above provided, a judgment shall be rendered against him or them, and a writ of possession shall be issued in favor of the State. That a copy of such judgment, under the signature and seal of the clerk of the court rendering the judgment, shall be forwarded to the State Treasurer, who shall immediately indorse the obligation of such purchaser 'forfeited,' note the fact of such endorsement on the copy of judgment aforesaid, and forward the same to the Commissioner of the General Land Office. The said Commissioner shall file said copy of judgment with the claim of such defaulting purchaser, and shall note such forfeiture on the account kept with said purchaser, and shall notify the surveyor of the county in which said land is situated that said land is again for sale."

The statute provides, also, "That in case any purchaser desires to sell land after he has made his first payment on the same, he may do so, but in that event his vendee shall file in the General Land Office a properly authenticated transfer from said purchaser, and said vendee shall be liable to the obligations and penalties imposed upon said original purchaser; and upon final and full payment on any purchase made under the provisions of this Act, the Commissioner of the General Land Office shall issue a patent to the purchaser making the same, or to his vendee or heirs." No residence or other requirement was made by the statute.

A patent carries with it a *prima facie* right to the land thereby granted by the State to the patentee. But an equitable title to such

land will supplant and supersede the naked legal title evidenced by the patent. Johnson v. Eldridge, 49 Texas, 507, 521; Sheppard v. Avery, 32 S. W., 793; Atkinson v. Ward, 61 Texas, 385. If equitable title to the whole interest in the land may prevail over the whole legal title the equitable title to an interest in the land wili prevail over the legal title to that interest. When the land in con· troversy here was "sold" to Hilliard, in terms of the statute, b/, acquired an equitable title to the whole tract good against the worlu excepting the State. The State retained in herself the legal title to th¢ land to secure the payment of Hillard's "obligation or note". Th⸗ State was concerned with the land no further than as such security. Hilliard sold all his equitable title to the land except that part of th⸗/ equitable title which he reserved to himself—"the right to and proprietorship of all minerals in, upon and under the said land". Noth·· ing in the statute prevented him from selling any portion of his equitable interest. The portion of that equitable interest which he did not sell remained his property subject to the payment to the State of his "obligation or note" according to its terms. By whom that payment should be made was immaterial. The State was interested only in its payment. When payment was made and patent issued, the legal title related back to the date of the sale to Hilliard and invested all holders of equitable title to interests in the land with legal title to such interests including the equitable title of Hillard to all minerals in, upon or under the land. The patent, when obtained related to the inception of title and inured to Hilliard's benefit to the extent of the interest reserved when he sold to Holt. Hollingsworth v. Holshousen, 17 Texas, 42; Miller v. Moss, 65 Texas, 179; Stiles v. Hawkins, (Com. App.) 207 S. W., 89; Clark v. Hall, 19 Mich., 357; Washington Rock Co. v. Young, 29 Utah, 108, 110 Am. St., 666, 80 Pac., 382; Rankin v. Miller, 43 Iowa, 11; Denver v. Mullen, 7 Colo., 345, 3 Pac., 693; Steeple v. Downing, 60 Ind., 478; Magruder v. Esmay, 35 Ohio St., 221; Nicholson v. Congdon, 95 Minn., 188, 103 N. W., 1034; Lessee of French v. Spencer, 21 How., 228; United States v. Clark, 200 U. S., 601, 50 L. Ed., 613.

We think, therefore, that question No. 1 in the certificate should be answered in the affirmative.

In the case of Luse v. Boatman, 217 S. W., 1096, the Court of Civil Appeals for the Second Supreme Judicial District construed a deed reserving "all the coal and mineral on and in" the land conveyed thereby and held that oil and gas were minerals embraced within the term "mineral" as used in the reservation. Application for writ of error was made to our Supreme Court in that case. We have examined that application and the sole question presented, in the various assignments, was whether the Court of Civil Appeals

erred in holding that the reservation of "all the coal and mineral on and in the above described land with the right, at all times, for him or them, or either of them to enter upon said premises and to mine and remove the same or any part thereof, in person and by agents", in the deed of conveyance, included oil and gas. Writ of error was refused. The opinion of the Court of Civil Appeals in the Luse Case reviews the authorities at some length and we deem it unnecessary to engage in a further discussion of them here. The reservation there construed to include oil and gas was less favorable to that contention than the reservation, in the deed, under consideration in this case because the use of the term, "coal", in that reservation gave some ground for insistence that the general term, "mineral", following should be construed as having reference to things only of the same kind and class as coal—the doctrine of *ejusdem generis*. That the reservation in the certificate set out does include, within its operative effect, oil and gas we have no doubt. State of Texas v. Parker, 61 Texas, 265; Swayne v. Long Acre Oil Co., 98 Texas, 597, 607, 69 L. R. A., 986, 8 Ann. Cases, 1117, 86 S. W., 740; Texas Company v. Daugherty, 107 Texas, 226, L. R. A., 1917F, 989, 156 S. W., 717; Williams v. South Penn. Oil Co., 52 W. Va., 181, 60 L. R. A., 795, 43 S. E., 214; Sult v. Hochstetter Oil Co., 63 W. Va., 317, 61 S. E., 307; Murray v. Allred, 100 Tenn., 100, 39 L. R. A., 249, 65 Am. St., 740, 43 S. W., 335; Barker v. Campbell, 64 Okla., R. A. N. S., 1043, 93 Pac., 53; Mound City v. Goodspeed Oil & Gas Co., 83 Kan., 136, 109 Pac., 1002; Columbian Oil Co. v. Blake, 13 Ind. App., 680, 42 N. E., 243.

We conclude that question No. 2 above should be answered in the affirmative.

The vendor's continued possession of the surface of the land in which he has sold the mineral but not the surface is not adverse to his vendee. In such a transaction it is contemplated that the surface shall be possessed by the vendor or his assigns. The vendor of mineral in the land could not exclude any one from possession of the surface because he has no rights therein except such as may be necessary to enable him to remove the minerals. When Hilliard sold to Holt all the land except the minerals and retained these there was a severance of the estate in the minerals. Possession of the other estate was not possession of the mineral estate and no delay in working or mining the mineral, in the absence of a specification of time within which such work or mining should be done, can be construed into a repudiation, by the owner of the other estate, of the estate in the minerals reserved by Hilliard. In the cases of Wallace et al. v. Hoyt et al., 225 S. W., 425 and Green v. West Texas Coal Co., 225 S. W., 548, the Third Court of Civil Appeals passed upon the question now under consideration and held in line with what we have

said above. Application for a writ of error explicitly raising the question was filed in each of those cases. Our Supreme Court denied the application in each case and thereby necessarily passed upon the question. Those cases fully review and cite the authorities bearing upon the question and we deem it unnecessary further to discuss them here.

We recommend that the third question propounded by the certificate be answered in the negative.

The opinion of the Commission of Appeals answering certified questions adopted, and ordered certified to the Court of Civil Appeals.

*C. M. Cureton.*
Chief Justice.